## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

GARY SCHINAGEL and
PENNY SCHINAGEL, Husband and wife,

      Plaintiffs,

v.                              No. Civ. 07-481 LH/RLP

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
RUSSELL MOORE,
RAYMOND DEL GRECO,
LEE SPEER and JOHN DOES 1-15,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On March 11, 2008, Defendants the City of Albuquerque (the "City"), Albuquerque Police Department ("APD"), Russell Moore, Raymond Del Greco, and Lee Speer (collectively, "Defendants") filed a "Motion for Partial Summary Judgment No. II: Dismissal of Plaintiffs' Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, and Supervisory Liability Claims" (Doc. 68) and a "Motion for Separate Trials" (Doc. 66).  The Court, having reviewed the motions, briefs, evidence, relevant law, and otherwise being fully advised, finds that the motion for partial summary judgment should be granted in part and denied in part, as discussed herein, and the motion for separate trials should be denied.

## I.    FACTUAL BACKGROUND[1]

---

[1]The facts of this case are set forth more fully in the Memorandum Opinion and Orders filed contemporaneously with this opinion and will not be repeated here.  The following facts are only those that are central to Plaintiffs' municipal liability, supervisory liability, and negligence claims and that have been established by admissible evidence, construed in the light most favorable to Plaintiffs.

### A.        Training

APD follows a multi-stage selection process for police officers.  Defs.' MSJ No. II (Doc. 68), Undisputed Fact ("UF") ¶ 1.  Applicants must pass numerous tests and, once selected, complete police academy training.  *See id.*  At the Albuquerque Police Academy, cadets are instructed on a variety of topics including law on the use of force and search and seizure.  *See id.*, Ex. B.  Elliott Guttmann, a constitutional law instructor for the academy, believes it is permissible for an officer, who is investigating a noise violation and getting no response to his knocking, to open the door to the residence, stand at the threshold, and announce his presence when he knows a person is inside the home, so long as he remains outside the home.  *See* Pls.' Resp. (Doc. 85), Ex. 5 at 5-6, 26-27, 44-46, 54-56.

Officer Moore received training on Fourth Amendment search and seizure law.  *Id.*, Ex. 1 at 67.  Based on that training, he believed he had authority to enter Plaintiffs' side yard, open their front doors, and look into their home without a warrant based on the loud music emanating from their home.  *See id.*, Ex. 1 at 67-69, 72-73.  None of Officer Moore's superiors ever criticized his actions that evening; rather, they affirmed his actions.  *Id.*, Ex. 1 at 73.  Deputy Chief Michael Callaway, APD and the City's representative concerning their policies and procedures regarding entry into personal residences, believes that Officer Moore's conduct in opening the door to Plaintiffs' home to try to get their attention was in compliance with APD policies and procedures. *See id.*, Ex. 4 at 16-17, 75.

Officer Del Greco could not recall whether he had been trained or not on the legality of opening a door to a residence.  *See id.*, Ex. 2 at 10-11.  He testified that he had on a number of occasions in the past, in the course of investigating noise complaints, opened the closed front door to a home, even though he was not invited to do so, in order to ask the residents to turn down their

music.  *Id.*, Ex. 2 at 30-32.  He has not received a lot of training at the academy on investigations of noise complaints.  *Id.*, Ex. 2 at 34.  Officer Del Greco believes that it is not a violation of the Fourth Amendment to open a door to a home when investigating a petty misdemeanor noise violation that does not involve an exigent circumstance or a caretaker function.  *Id.*, Ex. 2 at 35-36. Officer Juarez likewise believes an officer can open the door to a residence, but not enter, when investigating a noise violation and the residents are not responding to the officer's knocking or other attempts to contact them.  *See id.*, Ex. 3 at 11-12.

     **B.**     **No Settlement Policy**

     The City has an unwritten policy of not settling civil rights lawsuits involving misconduct by APD officers.  *See id.*, UF ¶ 11.

     **C.**     **Case of *State v. Scott***

     On November 9, 2005, the New Mexico Court of Appeals issued its opinion in the case of *State v. Scott*, 2006-NMCA-003, 138 N.M. 751, involving a prior investigation conducted by Officer Moore.  As described in the opinion, on April 20, 2003, Officer Moore observed a young man on a motorcycle "popping wheelies," so he activated his overhead lights and siren, but the motorcycle accelerated and he lost sight of it.  *Id.* ¶ 3.  Officer Moore recorded the license number, which he later determined corresponded with the defendant's home.  *See id.* ¶ 4.  Although the policy of investigating traffic violations provided for mailing a summons to appear in court on the charges, Officer Moore instead went to the home to personally contact the resident in case he was the vehicle's owner but not the driver he observed.  *See id.* ¶ 5.  Officer Moore, who worked the graveyard shift, arrived at the defendant's home in full uniform at 12:21 a.m., on April 23, 2003, without a search or arrest warrant, and noticed a motorcycle parked on the property.  *See id.* ¶¶ 6-8. He knocked on the door, and a roommate answered and said the defendant was in back.  *Id.* ¶ 8.

Although Officer Moore knew that the defendant would need to be awakened, Officer Moore told the roommate that he was conducting an investigation and wanted to speak with the defendant. *Id.* The roommate woke up the defendant who came to the door. *Id.* ¶¶ 8-9. Officer Moore told him he was investigating a traffic violation and asked him to step outside, which he did, at which point Officer Moore recognized him as the person on the motorcycle. *Id.* ¶ 9. Officer Moore read him his *Miranda* rights, after which the defendant admitted he was the driver. *Id.* ¶ 10. Officer Moore left, conferred with his supervisor, and later that day returned to the home to issue the defendant a summons for the charge of reckless driving. *Id.* ¶¶ 10-12.

The metropolitan court concluded Officer Moore violated the defendant's constitutional rights, but on review, the district court disagreed and denied the motion to suppress. *Id.* ¶ 12. The New Mexico Court of Appeals reversed, holding that Officer Moore seized the defendant when he compelled his participation in the investigation by using his authority as a police officer in a manner that would lead most innocent reasonable persons to believe they were not free to leave or otherwise terminate the encounter. *Id.* ¶ 14. The court also concluded that the seizure was unreasonable because it was not supported by reasonable suspicion and it was accomplished in an overly intrusive manner, based on the lateness of the hour in investigating a two-day-old minor offense. *See id.* ¶¶ 15, 40. Despite the court's conclusions, Officer Moore was never reprimanded for his conduct in the incident. Pls.' Resp., Ex. 1 at 54-55.

**D.      Use-of-Force Policies**

APD maintained a written use-of-force policy, covering the use of Tasers, chemical sprays, and other deadly, non-deadly, and less lethal force. *See* Defs.' MSJ No. II (Doc. 68), Ex. C. APD also maintained a written internal affairs policy regarding the manner in which it investigated and reviewed an officer's use of force against a citizen. *Id.*, UF ¶ 8. The policy required officers to

document any alleged injuries in their report of the incident and to submit the report through the chain of command to their division commander and to Internal Affairs within 24 hours of the event. *Id.*  It also required the officer's supervisor to complete a Use-of-Force Report for all types of force applied in a given incident and to submit the reports to, among other units, Internal Affairs.  *Id.* According to the policy, the officer's commander also had to document reportable police actions on the officer's Police Action Card, *see id.*, which was typically maintained by the watch commanders at the officer's chain-of-command level and was not part of the officer's personnel file, *see* Pls.' Resp., Ex. 4 at 33-34.

The use-of-force forms regarding the incident at Plaintiffs' home were maintained in a file in the Internal Affairs office regarding use-of-force reporting, but not in the Internal Affairs files for each of the officers involved.  *See id.*, Ex. 4 at 31-32.  Ronald Frost, the City and APD's representative on APD's hiring and training practices, testified that all use-of-force forms relating to an officer should be maintained in that officer's Internal Affairs file, not in a separate file in the Internal Affairs Unit.  *See id.*, Ex. 7 at 8-9, 16-18.

## II.    ANALYSIS

Defendants filed a motion for summary judgment on the municipal liability, supervisory liability, and negligence claims.  They contend that there is no evidence that they established an official policy or custom or knew of a pattern or practice that caused the officers to allegedly illegally enter Plaintiffs' home, use excessive force against them, or illegally arrest them.  They further assert that Plaintiffs cannot show that the training or supervision of the officers was deliberately indifferent or caused any Fourth Amendment violations.  Defendants also request a separate trial on any remaining municipal liability claims.

### A.    Municipal Liability

In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court ruled that municipalities cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory for merely employing a tortfeasor. Municipalities, instead, are subject to Section 1983 liability only when their official policies or customs cause a plaintiff's injuries. *Id.* at 694; *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006). There must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

A municipal policy can take the form of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers," whereas a municipal custom includes "persistent and widespread . . . practices of . . . officials." *Monell*, 436 U.S. at 690-91 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). Although a single decision may give rise to municipal liability, only decisions made by persons with "final policymaking authority" can subject a municipality to Section 1983 liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986). The responsibility for making policy may be delegated to officials whose acts in turn become the acts of the government, but the mere exercise of discretion by an official is not sufficient, by itself, to give rise to municipal liability. *See id.*

Defendants submitted APD's written hiring, selection, and use-of-force policies, which Plaintiffs do not argue are facially unconstitutional. Plaintiffs instead argue that questions of fact exist as to whether the City is subject to municipal liability on the following theories: (1) APD wrongly trained its officers that it was proper to open closed doors of residences without a warrant when investigating noise violations, creating a custom, policy, and practice of Fourth Amendment search and seizure violations; (2) the City's "no-settlement policy" of police misconduct lawsuits demonstrates deliberate indifference to the constitutional rights of citizens; (3) Officer Moore

6

previously acted inappropriately while investigating a misdemeanor matter at night and was not reprimanded for it; and (4) APD's failure to follow its own procedures to place Use-of-Force Reports in Internal Affairs files of individual officers demonstrates deliberate disregard for the civil rights of citizens. The Court will address each of Plaintiffs' arguments in turn.

### 1.   Failure to train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. The failure to train must reflect a deliberate, conscious choice by a municipality in order for liability to attach. *See id.* at 389. Where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," the failure to properly train represents a policy for which the city may be liable if it caused an injury. *Id.* at 390. To establish municipal liability under a failure-to-train theory, a plaintiff must prove that (1) an officer violated a constitutional right of the plaintiff's; (2) the violation arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrated a deliberate indifference by the city toward persons with whom the officer comes into contact; and (4) there is a direct causal link between the inadequate training and the unconstitutional conduct. *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003).

In a Memorandum Opinion and Order filed contemporaneously with this opinion, the Court concluded as a matter of law that Officer Moore violated Plaintiffs' Fourth Amendment rights by entering their curtilage and opening the door to their home based merely on a loud noise violation. The first element is thus satisfied. As to the second element, Plaintiffs have shown that officers

investigating loud noise violations at homes is a usual and recurring situation.  For example, Officer

Del Greco testified that he has investigated numerous noise complaints and that, on a number of

occasions, he opened the closed front door to the home, even though he was not invited to do so, in

order to ask the residents to turn down their music.

With respect to the third element, there is evidence demonstrating that Officer Moore's

erroneous belief in the constitutionality of his actions was due to the inadequate training he received.

Officer Moore's belief, based on his training, that he could open the door to a home when

investigating a loud noise violation was echoed not only by Officer Del Greco and Officer Juarez,

but also by Elliott Guttmann, APD's constitutional law instructor.  Moreover, Officer Moore's

supervisors affirmed his actions related to the incident, and Deputy Chief Callaway testified that

Officer Moore's conduct was in compliance with APD policies and procedures.  Because this Court

has determined that Officer Moore's actions were unconstitutional, any training he received

authorizing such actions was inadequate.

Whether that training amounted to deliberate indifference is a thornier issue.  The Tenth

Circuit has explained the evidence needed to meet this element as follows:

> The deliberate indifference standard may be satisfied when the municipality has
> actual or constructive notice that its action or failure to act is substantially certain to
> result in a constitutional violation, and it consciously or deliberately chooses to
> disregard the risk of harm. In most instances, notice can be established by proving
> the existence of a pattern of tortious conduct. In a narrow range of circumstances,
> however, deliberate indifference may be found absent a pattern of unconstitutional
> behavior if a violation of federal rights is a highly predictable or plainly obvious
> consequence of a municipality's action or inaction, such as when a municipality fails
> to train an employee in specific skills needed to handle recurring situations, thus
> presenting an obvious potential for constitutional violations.  Even where the City's
> policy is not unconstitutional, a single incident of excessive force can establish the
> existence of an inadequate training program if there is some other evidence of the
> program's inadequacy.

*Carr*, 337 F.3d at 1229 (internal quotations omitted).  Here, the evidence that officers were being

8

incorrectly trained on the constitutionality of opening doors to residences presents a question of fact as to whether such conduct amounted to an unconstitutional policy, practice, or custom that was substantially certain to result in constitutional violations. *See id.* at 1230 (noting that, if the City had actually trained its officers to shoot until dead, plaintiff would have survived summary judgment on municipal liability claim because the City would obviously have been on notice of, and consciously disregarded, the potential harm). Moreover, Officer Del Greco's testimony of past non-consensual entries into homes in similar circumstances is some evidence of a pattern of unconstitutional behavior. Accordingly, Plaintiffs have presented enough evidence to submit the deliberate indifference question to a jury.

Finally, as to the fourth element, Officer Moore testified that he believed it was constitutional for him to enter Plaintiffs' home under the circumstances based on his training and experience. This evidence suggests a causal link between the inadequate training and the unconstitutional conduct sufficient to survive summary judgment. *Cf. Brown v. Gray*, 227 F.3d 1278, 1290-91 (10th Cir. 2000) (holding that plaintiff presented sufficient evidence for jury to conclude that officer's actions were directly attributable to lack of instruction on "always armed/always on duty" policy where officer testified that he was attempting to make what he believed was a lawful arrest pursuant to that policy).

For all the foregoing reasons, the Court will deny Defendants' motion for summary judgment on Plaintiffs' municipal liability claims based on the theory that the City failed to properly train its officers as to the legality of opening doors to homes when investigating noise complaints, amounting to an unconstitutional unwritten policy or custom. Plaintiffs have not, however, argued or presented sufficient evidence to show that APD failed to train its officers on use of force. Consequently, Defendants are entitled to summary judgment on the theory that the City failed to train its officers

on the use of force.

### 2.      No settlement policy

To succeed on a municipal liability claim, a plaintiff must show that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). The record is devoid of evidence showing that the City's no-settlement policy is a moving force behind the alleged injuries here. Nor will the Court presume a causal link. After all, forcing officers against whom constitutional violations are alleged to have a jury of their peers judge their actions and credibility is not a policy that is on its face substantially certain to result in further constitutional violations. Such a policy could actually have the opposite effect of encouraging proper behavior to avoid the stress and inconvenience of trial. Moreover, the City has a right to have claims brought against its officers heard by a jury. *See Chavez v. City of Albuquerque*, No. Civ. 02-621 MCA/RHS, slip op. (Doc. 56) at 15 (D. N.M. Nov. 30, 2004). Defendants are thus entitled to summary judgment on Plaintiffs' theory of liability based on the no-settlement policy .

### 3.      Failure to reprimand

Plaintiffs fault the City and APD for failing to reprimand Officer Moore for his conduct in the *Scott* case. The New Mexico Court of Appeals, however, did not issue its ruling reversing the district court until November 9, 2005, after the events at the Schinagels' home occurred. Therefore, the failure to issue a reprimand following the Court of Appeals' determination of unlawful conduct could not have caused Officer Moore's conduct in this case.

Moreover, the facts of the *Scott* case are distinguishable from the events at issue here. In *Scott*, Officer Moore was not investigating a loud noise complaint, he did not enter the curtilage of the home, and he did not open the door to the home. Consequently, even had the City and APD

reprimanded Officer Moore prior to September 2005 based on its own conclusions that Officer Moore violated a citizen's rights in the *Scott* case, Plaintiffs cannot show that reprimanding Officer Moore for his actions in *Scott* may have prevented Officer Moore from entering the Schinagels' home and opening their door.  Nor can Plaintiffs demonstrate that the failure to reprimand for unrelated conduct was substantially certain to result in the denial of Plaintiffs' constitutional rights. "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.  Attaching liability for the failure to reprimand Officer Moore for his actions in the *Scott* case would thwart this admonition by the Supreme Court.  Defendants are therefore entitled to summary judgment on Plaintiffs' failure-to-reprimand theory of municipal liability.

### 4.      Use-of-force policy

Similarly, Plaintiffs have not shown that the way the use-of-force forms were filed, creating a "shadow filing system," caused the constitutional violations alleged here.  *Cf. Brooks v. Scheib*, 813 F.2d 1191, 1193-95 (11th Cir. 1987) (holding that plaintiff failed to establish causal link between procedures for investigating citizens' complaints and officer's deprivation of plaintiff's Fourth Amendment rights).  Defendants are thus entitled to summary judgment on Plaintiffs' theory of municipal liability based on the use-of-force reporting system.

### B.      Negligence

The New Mexico Tort Claims Act waives immunity for negligent supervision and training claims against supervisory law enforcement officers.  *Ortiz v. New Mexico State Police*, 112 N.M. 249, 252 (Ct. App. 1991).  "[I]mmunity is not waived for negligent training and supervision standing alone; such negligence must cause a specified tort or violation of rights." *McDermitt v. Corrections Corp. of America*, 112 N.M. 247, 248 (Ct. App. 1991).

11

Defendants argue that Plaintiff's state law negligence claim based on APD's failure to train or supervise its officers should be dismissed because there is no evidence that the training or supervision that the Defendant Officers received caused them to commit the enumerated torts. The Court agrees with Defendants in part. The undisputed evidence in the case shows that the officers received proper training on use of force, and Plaintiffs have not argued or submitted evidence to the contrary. Moreover, as discussed above, Plaintiffs have not submitted sufficient evidence to create a question of fact as to whether the failure to reprimand Officer Moore caused the illegal entry here. As to opening the doors to citizens' homes while responding to noise complaints, however, the Court has already determined that there are questions of fact as to whether APD's training on this matter was inadequate and whether any deficiency caused Officer Moore to violate Plaintiffs' Fourth Amendment rights. The Court will therefore deny Defendants' motion for summary judgment on Plaintiffs' negligence claim based on the alleged failure to train officers properly on entering homes when investigating noise violations.

### C.     Bifurcation

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "District courts have 'broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused.'" *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999) (quoting *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1447 (10th Cir. 1985)). Defendants request that the Court order separate trials for Plaintiffs' underlying claims against Defendant Officers and their municipal liability claims against the City based on convenience, economy, and prejudice.

Defendants first contend that separate trials will be more efficient, because a finding in their

12

favor on the underlying claims will avoid the time and expense of a trial on the issue of municipal liability.  The Court, however, has already concluded in a Memorandum Opinion and Order filed contemporaneously with this opinion that Officer Moore violated Plaintiffs' Fourth Amendment rights by entering their curtilage and opening their front door without a warrant or exigent circumstances.  The Court has also ruled herein that there are questions of fact entitling Plaintiffs to have a jury determine their municipal liability and negligence claims.  Because the jury will have to consider the municipal liability claim, the jury's time will not be wasted in hearing evidence on municipal liability at the same time as evidence on the underlying claims.  Moreover, based on the Court's rulings herein, trial of the municipal liability and negligence claims will be limited to Plaintiffs' failure-to-train theory arising from entries during investigations of noise complaints, which should not amount to the "massive undertaking" of time and effort feared by Defendants.  One trial will avoid duplication of witnesses and evidence, and thus, be more efficient and convenient than two trials.

Defendants also argue that they will suffer prejudice from a single trial, because jurors may be confused by the different standards of liability for the claims and they may become biased from hearing evidence of prior incidents of misconduct allegedly committed by APD officers, evidence which is only relevant to the municipal liability claims.  These concerns are unfounded.  Jury instructions can be given to clarify the different standards of liability between the underlying claims and the municipal liability claims to avoid any potential jury confusion.  Appropriate jury instructions can also be given to cure any potential prejudice from evidence of prior illegal entries.  Consequently, because one trial will be more convenient and efficient and will not unduly prejudice Defendants, their request for separate trials will be denied.

**IT IS THEREFORE ORDERED** that

1.      Defendants' Motion for Partial Summary Judgment No. II:  Dismissal of Plaintiffs' Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, and Supervisory Liability Claims (Doc. 68) is **GRANTED** in part and **DENIED** in part as follows:

       a.      Defendants' request for summary judgment on Plaintiffs' negligence and municipal liability claims that are based on the theory that the City and APD failed to properly train their officers on the legality of opening doors to homes when investigating noise complaints, amounting to an unconstitutional unwritten policy or custom, is **DENIED**;

       b.      Defendants' request for summary judgment is **GRANTED** on all other of Plaintiffs' negligence, supervisory liability, and municipal liability theories; and

2.      Defendants' Motion for Separate Trials (Doc. 66) is **DENIED**.


_____
SENIOR UNITED STATES DISTRICT JUDGE

14