IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GARY SCHINAGEL and
PENNY SCHINAGEL, Husband and wife,

    Plaintiffs,

v.                                       CIV. NO. 07-00481 LH/RLP

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT
RUSSELL MOORE,
RAYMOND DEL GRECO,
LEE SPEER and JOHN DOES 1-15,

    Defendants.

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON CLAIM FOR FAILURE TO PROPERLY TRAIN

COME NOW Plaintiffs, Gary and Penny Schinagel, through their attorneys of record, Wagner Ford Law, PA, and Liane E. Kerr Law Office, LLC, and pursuant to Fed. Rule of Civil Procedure 50(b), hereby renew their Motion for Judgment as a Matter of Law. As grounds for the renewal of their Rule 50 Motion, Plaintiffs state as follows:

1.     After Defendants completed their case, pursuant to Fed. R. Civ. 50(a)(1)(b), Plaintiffs made an oral Motion for Judgment in their favor as a matter of law on the claim of failure to properly train Albuquerque Police Officers concerning Fourth Amendment and New Mexico Constitutional law as to when Officers may enter into the curtilage and open doors to citizens' homes. Plaintiffs' Motion was either taken under advisement by the Court or was denied at the time (Plaintiffs' counsel is unclear

as to the disposition of the Motion.) Pursuant to Fed. R. Civ. P. 50(b), Plaintiffs hereby renew their Motion.

2. Plaintiffs' Motion for Judgment, and its renewal, are based on the following:

1. <u>The trial testimony by Officer Russell Moore</u> that as of September 6, 2005, he believed it to be constitutionally acceptable to enter into the curtilage of a citizen's yard and to open the door to a citizen's home when investigating a loud noise complaint and that he acted upon his belief when he went into the Schinagels' side yard and when he opened the door to their house;

2. <u>The trial testimony of Office Chris Juarez</u> that, as of September 6, 2005, that he believed it was constitutionally acceptable enter the cartilage of citizen homes and to open the door to citizen homes;

3. <u>The trial testimony of Officer Raymond Del Greco</u> that, as of September 6, 2005, he believed that it was constitutionally acceptable to open doors into citizen homes when investigating a loud noise complaint; and finally,

4. <u>The trial testimony of Deputy Chief Michael Calloway</u> that he believed it was constitutionally acceptable to enter the side yard of citizen homes and to open the door into citizen homes when investigating loud noise complaints. Deputy Chief Calloway was acting as a representative and agent of the City of Albuquerque when he testified. He was held out as the corporate representative of the City and was offered to testify to the following: "The City of Albuquerque/Albuquerque Police Department's policies and

procedures, written directives, unwritten directives and position in general regarding entry by APD Officers into the personal residences of citizens, including the opening of doors to residences." Deposition of Michael Calloway, pg. 17, lines 4-14, a copy of which is attached hereto as <u>Exhibit 1</u>. Deputy Chief Calloway further testified as follows:

> Q: What then should Officer Moore have done? He's knocking at the door and nobody's answering, what then is the policy and procedure for what a police officer should have done?
>
> A: Continue to try to make contact with the owners or the responsible parties.
>
> Q: How?
>
> A: Through repeated knocks, through potentially calling. And in this case, I know Officer Moore took the action of opening the door and calling out trying to garner their attention.
>
> Q: And is it your testimony that Officer Moore's conduct in opening the door to try to get their attention was in compliance with APD policies and procedures?
>
> A: It's my testimony that it's not a violation of policy, that's correct.

(Exhibit 1, pgs. 75, lines 3-19)

> Q: Is there any specialized training, to your knowledge, given to police officers concerning the very issue of when they may or may not open the door of a residence?
>
> A: There's specialized training regarding search and seizure?
>
> Q: How about more specific to the issue of when they may or may not open the door to a citizen's residence?
>
> A: That specific, no.
>
> Q: No, you're not aware of any training?
>
> A: I'm not aware of any training.

(<u>Exhibit 1</u>, pg. 76, lines 2-12)

3.      The above referenced testimony was entirely uncontested by the Defendants. The defense provided no witness and no testimony whatsoever to dispute the fact that everyone from a first class patrolman (Officer Raymond Del Greco) to the Deputy Chief of Police (Michael Calloway) himself, believed that it was constitutional to open the door to citizen homes when investigating a loud noise complaint. Likewise, it was entirely uncontested that it was not a violation of any City policy for Officers to enter the curtilage or to open the door to citizen homes when investigating a loud noise complaint. This uncontested evidence clearly and unequivocally demonstrates that the City of Albuquerque has failed to properly train its Officers concerning the constitutional dimensions of proper entry into citizen homes. In fact, the evidence reflects a systemic policy of violating constitutional rights in this regard. Whereas Defense counsel may challenge the quality of the evidence on grounds that the evidence did not go to the actual training material, Defense counsel failed to provide the actual training material into evidence to show that such was sufficient. Nor did the Defense provide evidence of any kind to refute the Plaintiffs' testimony that the Officers (all the way up to the Deputy Chief) were improperly trained on this constitutional area of the law. Because Officer Moore testified that he believed that what he was doing when he went into the Schinagel's side yard and when he opened the door to their house was constitutional – at the time he did it – Plaintiffs established that the failure to properly train its Officers in this regard, was a proximate cause of Plaintiffs constitutional violation by Officer Moore.

4.   Fed. R. 50(a)(1) provides:  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may … grant a motion for judgment as a matter of law against the party on a claim or defense that under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  In the present case, the issue of whether the City of Albuquerque failed to property train its police Officers concerning when they may enter the cartilage and open the door to citizens homes, was fully heard.  Because there was no evidence whatsoever to refute Plaintiffs' evidence, a reasonable jury would not have a legally sufficient evidentiary basis to find for the defense on this issue.  Thus, the Court may grant a motion for judgment as a matter of law on Plaintiffs' failure to properly train issue.

5.   A government body may be sued directly if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation or decision officially adopted and promulgaged by that body's officers.  *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).  The Supreme Court has also found that a 42 U.S.C.S., Section 1983 claim can be brought "for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels.  *Id.* At 690-691.  Municipalities can be held liable only when an injury was inflicted by a government's lawmakers or by those whose edicts or acts may fairly be said to represent official policy.  *See St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988).

6. This Court has ruled that clearly established law existed at the time of the incident that entry into the cartilage of citizen homes is unconstitutional. In its Memorandum Opinion and Order granting summary judgment in favor of the Defendants on their Fourth Amendment violation claim, this Court stated, "The Court therefore concludes, as a matter of clearly established law, that Officer Moore was not free to enter the side yard without a warrant or without some recognized justification for a warrantless entry." (Doc. 116, pg. 13) Likewise, this Court also found that the law was clearly established at the time of the incident concerning the opening of doors to citizen homes. This Court wrote, "By 2001, the Supreme Court had made clear that any physical invasion of the structure of the home, by even a fraction of an inch, was too much, and there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor. *See Kyllo v. United States*, 533 U.S. 27, 37 (2001)". (Doc. 116, pg. 15) If the law was clearly established for purposes of evaluating Officer Moore's conduct, the law was clearly established for purposes of determining the City's conduct.

7. To prove their claim that the City of Albuquerque failed to properly train its Officers, the Schinagels had to prove the following: 1) that the City training program was not adequate to train its Officers to properly handle usual and recurring situations with which police Officers must deal; 2) that the City knew that more and/or different training was needed to avoid illegal entry or that this should have been obvious to the City of Albuquerque; 3) the City's failure to provide adequate training was the moving force and cause of Officer Moore's violation of the Schinagels' constitutional rights; and

4) that the City's failure to train was the proximate cause of the Schinagels' damages. *See Allen v. Muskogee, Oklahoma*, 119 F. 3d 837 (10th Cir. 1997). As regards the second and third requirements, a showing of specific incidents which establish a pattern of constitutional violations is not necessary to put the City on notice that it training program is inadequate. Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability. Id. at 841-842. At the trial of this matter, Plaintiffs presented evidence which proved all four elements. In turn, Defendants failed to dispute any element proven by the Plaintiffs. In fact, Defendants case was completely silent on the failure to train claim. Defendants did not cross examine any witness who testified concerning the training issue and Defendants did not call any witnesses on the matter.

8. The inadequacy of police training may serve as the basis for 42 U.S.C.S., Section 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of the persons with whom the police come into contact. *See City of Canton v. Harris*, 489 U.S. 378 (1989). Deliberate indifference can be proven by demonstrating the existence of a policy or custom as the moving force behind the constitutional violation. *Id.* Deliberate indifference is not satisfied by a mere allegation that a training program represents a policy for which the City is responsible. Rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform, and if it is not, whether such

inadequate training can justifiably be said to represent "city policy." It is only when the execution of the government's policy or custom ... inflicts the injury that the municipality may be held liable under Section 1983. *See Monell, supra.* In this case, the testimony of Deputy Chief Calloway goes right to the issue of the existence of a "city policy." Because of his testimony, we need not examine a training program to in conjunction with how Officers are carrying out their work to determine whether such conduct is rampant enough to evidence a City wide policy. The police Officers all admitted an erroneous understanding of constitutional law and Deputy Chief Calloway cut to the chase and simply admitted that the custom and policy of the City was that it was acceptable for Albuquerque police Officers to enter into cartilages and open doors to citizen homes. Deputy Chief Calloway testified that it was the policy of the City of Albuquerque to violate the Fourth Amendment and New Mexico State Constitutional rights of its citizens. Deliberate indifference is clear in this case.

9. Approaching citizen homes is a usual and recurring situation with which police Officers must deal. Thus, the first element of the constitutional tort is met in this case. The testimony of Officers Russell Moore, Chris Juarez and Raymond Del Greco – along with the testimony of Deputy Chief Calloway demonstrate that the training program on the common situation is inadequate. It is anticipated that Defendants will argue that the element was not met because no training material brought to the jury's attention which was inadequate (Defendant's attorney argued this in response to Plaintiff's oral Motion at trial). However, Defendants are also aware of the fact that no such training material exists and so could not have been produced. Plaintiffs' claim

should not be defeated due to the absence of one of several potential forms of evidence which could be used to prove the element of the claim. Plaintiffs proved the first element through direct testimony of police Officers at all levels of the police force as to their understanding of constitutional law. Deputy Chief Calloway further explained that it was the policy and custom of the police department to have Officers go into cartilages and open doors to homes. Defendants did not even cross examine the witnesses on this point.

10. As to the second element, because the law on entry into the cartilage and the opening of doors to citizen homes was clearly established at the time of the incident (see Doc. 116, pg. 13 and 15), it should have been obvious to the City that it needed a different training program to avoid illegal entry.

11. As to the third element, it is undisputed in this case that the City's failure to provide adequate training resulted in a policy and custom by the City, which was carried out by its Officers.

12. Finally, Officer Moore testified that had he known that he was violating the constitutional rights of the Schinagels he never would have entered their cartilage and never would have opened the door to their home. Implicit in this statement is the fact that had he known that what he was doing was unconstitutional, he would not have done it. As such, Officer Moore's apology is an admission which evidences the second, third and fourth elements of the claim. Officer Moore's violation of the Schinagels' constitutional rights resulted in their damage as awarded by the jury.

13.  Plaintiffs presented uncontested proof of every element of a claim that the City of Albuquerque failed to properly train its Officers on entry into cartilage and the opening of doors.  A reasonable jury would not have a legally sufficient evidentiary basis to find for the Defendants on this issue.  The Court must grant judgment as a matter of law when the evidence points all one way and is susceptible of no reasonable inferences favoring the nonmoving party.  *See Yearous v. Niobrara County Memorial Hosp.,* 128 F.3d 1422 (10th Cir. 1997); *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505 (In considering a motion for judgment as a matter of law, the judge must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented).  "It has long been established and no longer is subject to doubt that whether the evidence presented at trial is sufficient to create an issue of act for the jury or will permit the court to enter judgment as a matter of law is solely a question of law to be determined by the trial court."  *See generally Wright & Miller, Federal Practice and Procedure: Civil 3d, section 2524 and cases cited therein.*  Consequently, Plaintiffs respectfully request that the Court enter judgment in favor of the Plaintiffs on this claim.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment as a matter of law in favor of Plaintiffs on their claim that the City of Albuquerque failed to property train its police Officers concerning the entering of cartilages and the opening of doors to citizen homes, and grant such additional relief as is deemed just and appropriate under the circumstances.

Respectfully submitted,

WAGNER FORD LAW, PA

BY: _____
KENNETH R. WAGNER
LISA P. FORD
200 Lomas Boulevard NW, Suite 850
Albuquerque, NM 87102

and

LIANE E. KERR LAW OFFICES, LLC
Liane K. Kerr, Esq.
1011 4th Street NW
Albuquerque, NM 87102

Attorneys for Plaintiffs

    I HEREBY CERTIFY that on **April 21, 2009**, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Attorneys for Defendants:
Luis E. Robles, Esq.
Robles, Rael & Anaya, PC
luis@roblesrael.com

By: _____
LISA P. FORD