# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

GARY SCHINAGEL and
PENNY SCHINAGEL, Husband and wife,

      Plaintiffs,

v.                                  No. Civ. 07-481 LH/RLP

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
RUSSELL MOORE,
RAYMOND DEL GRECO,
LEE SPEER and JOHN DOES 1-15,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This Court held a jury trial in this case on April 13-16, 2009. On April 21, 2009, Plaintiffs Gary and Penny Schinagel filed a Renewed Motion for Judgment as a Matter of Law on Claim for Failure to Properly Train (Doc. 170). Subsequently, on May 4, 2009, Plaintiffs filed a Motion for New Trial (Doc. 180). The Court, having reviewed the motions, briefs, evidence, relevant law, and otherwise being fully advised, finds that the renewed motion for judgment as a matter of law should be granted and the motion for new trial should be denied.

## I.    BACKGROUND

This Court entered a Memorandum Opinion and Order (Doc. 116) on December 18, 2008, granting Plaintiffs summary judgment on their unlawful entry claims against Defendant Moore brought under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. That opinion did not resolve the issues of damages arising from the unlawful entry.

The case proceeded to trial before a jury on April 13-16, 2009, against Defendants Russell

Moore, Lee Speer, and the City of Albuquerque ("the City"). At trial, Plaintiffs Gary and Penny Schinagel asserted claims against Officer Moore for unlawful entry and seizure, unlawful arrest, excessive force, and malicious prosecution under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution as well as state tort claims for assault and battery and false arrest and imprisonment. Gary Schinagel also proceeded against Officer Speer on a § 1983 claim for excessive force and state tort claims for assault and battery. Both Gary and Penny Schinagel asserted municipal liability claims against the City for violation of their Fourth Amendment rights for failure to adequately train its officers concerning entry into citizens' homes and yards.

At the close of the evidence, Plaintiffs orally moved for judgment as a matter of law under Rule 50(a) on their municipal liability claims. The Court denied the motion and allowed the municipal liability claims, as well as the other asserted claims, to go to the jury. As to the municipal liability claims, the Court instructed the jury that the Schinagels had to prove each of the following things in order to prove that the City failed to adequately train its officers:

> 1. The City of Albuquerque's training program was not adequate to train its officers to properly handle usual and recurring situations with which police officers must deal;
> 2. The City of Albuquerque knew that more and/or different training was needed to avoid illegal entry, or that this was obvious to the City of Albuquerque;
> 3. The City of Albuquerque's failure to provide adequate training was the moving force and cause of Officer Moore's illegal entry on the Schinagels' property; and
> 4. The City of Albuquerque's failure to train was the proximate cause of the Schinagels' damages.

(Court's Jury Instructions (Doc. 168) at 29.)

Following its deliberations, the jury returned a verdict in favor of Defendants on all claims except the Schinagels' unlawful entry claims against Defendant Moore. As to those claims, the jury awarded Gary and Penny Schinagel $1.00 each. The jury found in favor of the City on Plaintiffs'

2

municipal liability claims.

On April 21, 2009, Plaintiffs filed a timely renewed motion for judgment as a matter of law on their municipal liability claim. (Doc. 170.) Plaintiffs request that the Court enter judgment in favor of Plaintiffs on their claim that the City failed to properly train its officers concerning the entering of curtilages and the opening of doors to citizens' homes, and grant such additional relief as deemed just and appropriate under the circumstances. Plaintiffs also filed a timely motion for new trial under Rule 59 to prevent injustice and to permit a jury to return a verdict more in keeping with the substantial weight of the evidence that was presented at trial. (Doc. 180.) Defendants oppose both motions.

## II.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON MUNICIPAL LIABILITY CLAIM

Plaintiffs contend they are entitled to judgment as a matter of law on their municipal liability claims against the City, based on its failure to properly train Albuquerque Police Department ("APD") officers as to when officers may lawfully enter into the curtilage of and open doors to citizens' homes, specifically when investigating loud noise complaints. They contend that the following uncontested evidence shows a failure to train, amounting to a constitutional violation:  the officers who testified, including Deputy Chief Callaway, the City and APD's policy and procedure representative, believed it was constitutional to open the door to citizen homes when investigating loud noise complaints; APD's training materials covered only general search and seizure law without discussing whether a loud noise violation, alone, amounts to an exigency allowing an officer to open the door to a citizens' home; and Officer Moore testified that, had he known it was a violation of the Constitution under the circumstances to enter into the curtilage and open the door to the home, he never would have done so.

## A.    STANDARD

Rule 50(b) states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 10 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b) (2008).  Under Rule 50(a), a court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  "[A] directed verdict for the party having the burden of proof may be granted only where he has established his case by evidence that the jury would not be at liberty to disbelieve."  *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495, 499 (10th Cir. 1984).

In analyzing a Rule 50 motion for judgment as a matter of law, "the court should review all of the evidence in the record."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  In doing so, however, the court must view the evidence in the light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences from the evidence.  *See id.*; *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 613 (10th Cir. 1984).  The court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury.  *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996); *Brown*, 736 F.2d at 613.  The court should thus give credence to the evidence favoring the

4

non-movant as well as to evidence supporting the movant that is uncontradicted and unimpeached. *Reeves*, 530 U.S. at 151. "A directed verdict for the party bearing the burden of proof may be granted only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in his favor." *Hurd*, 734 F.2d at 499. "A motion for a judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable men could not arrive at a contrary verdict." *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996) (internal quotations omitted).

**B.    EVIDENCE AT TRIAL RELEVANT TO MUNICIPAL LIABILITY CLAIM**

Deputy Chief Michael Callaway testified at trial by way of his deposition. (Trial Tr. (Doc. 182-4) at 2:2-7.) Deputy Chief Callaway oversees APD's Field Services Bureau and is responsible for, among other things, developing policies and procedures for APD. (*Id.* 2:22-3:9.) He testified as a representative of the City and APD concerning the City's policies and procedures, written directives, unwritten directives, and position in general regarding entry by APD officers into the personal residences of citizens, including the opening of doors to residences. (*Id.* 4:10-5:9.) In regard to the City's position on opening doors to residences when investigating noise violations, Deputy Chief Callaway testified as follows:

> Q:    [G]iven the circumstance of an investigation of a loud noise violation, and the officer is standing in a door, and he's knocked, and nobody has answered within a few minutes, is it constitutionally permissible for that officer to open the door to that house?
>
> A:    And my answer is that is where the – that situation, how is the best way to put it? Simply opening the door and announcing without going into the house is potentially constitutionally permissible from the standpoint of we can get different opinions, different legal opinions, on that same set of circumstances.
>
> Q:    Is it your testimony that the conduct of opening the door is permissible if things like a welfare check is not invoked, or hot pursuit or an exigent circumstance?
>
> A:    Yes.

Q:     Absent any of these things, absent any of those three, would it be constitutionally permissible to open the door of that house given that you're standing there investigating a loud noise complaint?

A:     Simply opening the door, and again, and announcing the presence, is potentially permissible.

*****

A:     I can say with some degree of informed opinion is that constitutionally simply opening the door has not been, in terms of loud music, loud party calls, has not been viewed as necessarily constitutionally prohibited in and of itself.  It does not necessarily constitute an entry into the residence in and of itself.

Q:     What, then, should Officer Moore have done?  He's knocking at the door and nobody is answering.  What, then, is the policy and procedure for what a police officer should have done?

A:     Continued to try to make contact with the owners or the responsible parties.

Q:     How?

A:     Through repeated knocks, through potentially calling.  And in this case, I know Officer Moore took the action of opening the door and calling out, trying to garner their attention.

Q:     *And is it your testimony that Officer Moore's conduct in opening the door to try to get their attention was in compliance with APD policies and procedures?*

A:     *It's my testimony that it is not a violation of the policy.  That's correct.*

Q:     *Is there any specialized training, to your knowledge, given to police officers concerning the very issue of when they may or may not open the door of a residence?*

A:     *There is specialized training regarding search and seizure.*

Q:     *How about more specific to the issue of when they may or may not open the door to a citizen's residence?*

A:     *That specific, no.*

Q:     No, you're not aware of any training?

A:     I'm not aware of any training.

Q:     Are you familiar with the training enough to know whether there is no training provided on that issue?

A:     I would defer to the persons who provide that training to answer that question exactly to all the specifications of the training.  I'm not aware of any training that specific.

(*Id.* 6:15-7:11; 8:17-10:6.) (Emphasis added.)

As for the specific training Officer Moore received, he testified that he attended the City's police academy for 19 weeks of training to become an APD officer.  (*See* Trial Tr. (Doc. 187) at

8:3-23; 99:15-22).  His training included the subject of general Fourth Amendment search and seizure law.  (*See* Trial Ex. 19 (Doc. 182-2); Trial Tr. (Doc. 187) at 99:15-19.)  The training manual used by the academy instructed officers that a search warrant is required under the Fourth Amendment to search a home, unless a specific exception applied.  (*See* Trial Ex. 19 (Doc. 182-2).)  The manual listed the following exceptions to the warrant requirement: consent, exigent circumstances, abandoned property, open fields, plain view, inventory searches, protective sweep, search incident to arrest, and community caretaker.  (*Id.*)  The training manual did not contain a passage addressing the specific incident of whether an officer may enter a citizen's curtilage or open a door to a citizen's home when investigating a loud music or noise complaint.  (*See id.*)

Officer Moore testified that he takes responsibility for violating the Schinagels' Fourth Amendment and New Mexico constitutional rights by opening the side gate, entering their side yard, and for opening their front door.  (Trial Tr. (Doc. 187) at 38:17-40:2; 70:19-22; 72:14-18.)  He did not believe, however, that he had violated their rights until after this Court's ruling that he had:  "If I violated those rights that night, and it's been a judgment of this court that I did, then the only way that I'm not going to do that again and maintain the public trust as a law enforcement officer is to learn from that, no longer do that, and approach calls like this in the future differently."  (*Id.* 72:7-12; *see also id.* 39:14-16.)  He specifically acknowledged, "Had I known that night that by opening that side gate and walking on that side yard would have been a violation of those people's civil rights, their Fourth Amendment right to illegal searches and seizures, I never would have walked back there."  (*Id.* 71:24-72:3.)  When asked if he thought the violation of the Schinagels' rights was the City's fault, Officer Moore responded, "No, the [C]ity didn't walk on the side of the yard, I did."  (*Id.* 72:18.)

Officer Chris Juarez also testified at trial that, at the time of the incident, he too believed,

based on the training he received with APD, that it was acceptable and lawful to open the door to citizen homes when investigating loud noise complaints.

## C.    ANALYSIS

In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court ruled that municipalities cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory for merely employing a tortfeasor.  Municipalities, instead, are subject to Section 1983 liability only when their official policies or customs cause a plaintiff's injuries.  *Id.* at 694; *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006).  There must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

A municipal policy can take the form of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers," whereas a municipal custom includes "persistent and widespread . . . practices of . . . officials."  *Monell*, 436 U.S. at 690-91 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).  Although a single decision may give rise to municipal liability, only decisions made by persons with "final policymaking authority" can subject a municipality to liability.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986). The responsibility for making policy may be delegated to officials whose acts in turn become the acts of the government, but the mere exercise of discretion by an official is not sufficient, by itself, to give rise to municipal liability.  *See id.*

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Harris*, 489 U.S. at 388.  The failure to train must reflect a deliberate, conscious choice by a municipality in order for liability to attach.  *See id.* at 389.  As the Supreme Court

8

explained:

> The issue . . . is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390 (internal footnote omitted).

To establish municipal liability under a failure-to-train theory, a plaintiff must prove that (1) an officer violated a constitutional right of the plaintiff's; (2) the violation arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the officer's training was inadequate and demonstrated a deliberate indifference by the city toward persons with whom the officer comes into contact; and (4) there is a direct causal link between the inadequate training and the unconstitutional conduct. *See Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003).

### 1.    Violation of a constitutional right

As to the first requirement, the Court, in a Memorandum Opinion and Order, concluded as a matter of law that Officer Moore subjected Plaintiffs to an unreasaonble entry of their home, in violation of their civil rights, when he opened the gate to their yard and entered their side yard and when he opened the door to their home. The Court instructed the jury as to its ruling. (*See* Court's Jury Instructions (Doc. 168) No. 12). Plaintiffs therefore proved the first element as a matter of law.

### 2.    Usual and recurring situation with which officers must deal

To satisfy this element, Plaintiffs had to prove that the situation faced by Officer Moore was likely, foreseeable, or predictable. *Brown v. Gray*, 227 F.3d 1278, 1288 (10th Cir. 2000). "The

situation need not be frequent or constant; it must merely be of the type that officers can reasonably expect to confront." *Id.* Circumstances that constitute usual and recurring situations for police include individuals requiring medical care while in custody, arrests of fleeing felons, and encounters with armed mentally ill people. *Id.*

In their motion, Plaintiffs simply argue, "Approaching citizen homes is a usual and recurring situation with which police Officers must deal." Pls.' Mot. (Doc. 170) at 8. Plaintiffs do not discuss or cite any evidence they presented to the jury to support this assertion. Defendants contend that Plaintiffs submitted no evidence that APD knew that more and/or different training was need to avoid illegal entries or that this was obvious to APD. The Court finds, however, that as a matter of law, Plaintiffs met this element.

The evidence showed that playing unreasonably loud music is a petty misdemeanor crime in Albuquerque. (*See*, *e.g.*, Trial Tr. (Doc. 187) at 87:25-88:1, 107:1-3.) When dispatch received the loud noise complaint, it notified Officer Moore and he responded to the call without reservation, indicating it was not an unusual call. Moreover, in light of common experience, it is obvious that responding to loud music complaints, which the City has made a crime, is the type of recurring situation in Albuquerque that police officers can reasonably expect to confront. *Cf. City of Canton*, 489 U.S. at 390 n.10 ("For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.") (internal citation omitted); *Carr*, 337 F.3d at 1228 (noting that district court correctly found, on summary judgment, that the city's officers can reasonably be expected to regularly confront aggressive violent persons who are armed

10

with some weapon, and thus, evidence met requirement that use of force arose under circumstances that constitute usual and recurring situation with which officers must deal).

### 3.    Inadequate training demonstrating deliberate indifference

As to the third element, Plaintiffs presented undisputed evidence showing that the training Officer Moore received was inadequate on entry into curtilage and homes when investigating noise complaints.  Officer Moore testified that he did not know, until this Court's ruling, that his actions were unconstitutional.  Officer Juarez likewise testified that he thought, based on his APD training, that an officer could open the door to a residence in response to merely a loud noise complaint. Deputy Chief Callaway testified that Officer Moore's actions did not violate APD policy.  Clearly, if APD policy allowed officers to enter curtilages and open door to homes when investigating noise complaints, then it is reasonable to infer that APD was not instructing its officers to the contrary. Indeed, Deputy Callaway testified that he was not aware of any training officers received on the specific situation Officer Moore confronted.  Although he said he would defer to the persons who provide that training to answer exactly the specifications of the training, he reiterated that he was not aware of any training that specific.  Moreover, the training manual in evidence shows that officers were only instructed on general search and seizure law, without instruction as to whether a loud noise violation meets any exceptions to the search warrant rule.  The evidence at trial therefore established that the training Officer Moore received was inadequate on the topic of entering homes and curtilages without a warrant when investigating loud noise complaints.

Whether that inadequate training amounted to deliberate indifference, however, is a closer issue.  The Tenth Circuit has explained the evidence needed to meet this element as follows:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to

11

disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, *deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.* Even where the City's policy is not unconstitutional, *a single incident of excessive force can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy.*

*Carr*, 337 F.3d at 1229 (internal quotations omitted) (emphasis added).

In this case, there is no evidence of a pattern of unconstitutional conduct or that the City had actual notice that its failure to provide training on entering homes and curtilages when investigating noise complaints was substantially certain to result in constitutional harm. Contrary to Defendants' argument, however, a history of widespread prior abuse is not the only way to show notice. As the Tenth Circuit held in *Carr*, constructive notice can be shown through a single incident of unconstitutional behavior if such an incident was a highly predictable or plainly obvious consequence of the City's inadequate training. Here, the City's own policy representative stated that Officer Moore's actions did not violate its policy. Officer Moore was thus acting in accordance with the City's policy when he unconstitutionally entered the Plaintiffs' home and opened their door. This is therefore not a case where the City's policy is lawful on its face. Rather, the City's policy was unconstitutional, and thus, the City was necessarily not training its officers on the specific skills they needed to handle the recurring situation of investigations into loud noise complaints. Plaintiffs therefore proved deliberate indifference by the City. *See Carr*, 337 F.3d at 1229. *See also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question.").

### 4.    Direct causal link

Finally, as to the fourth element, Officer Moore testified that, at the time, he believed it was constitutional for him to enter Plaintiffs' home under the circumstances.  He further stated, "Had I known that night that by opening that side gate and walking on that side yard would have been a violation of those people's civil rights, their Fourth Amendment right to illegal searches and seizures, I never would have walked back there."  This statement affirmatively answers the relevant question of "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  *See City of Canton*, 489 U.S. at 391.  Accordingly, the trial evidence demonstrates a direct causal link between the inadequate training and the unconstitutional conduct.  *Cf. Brown*, 227 F.3d at 1290-91 (holding that plaintiff presented sufficient evidence for jury to conclude that officer's actions were directly attributable to lack of instruction on "always armed/always on duty" policy where officer testified that he was attempting to make what he believed was a lawful arrest pursuant to that policy).

### D.    CONCLUSION

This is a case where the uncontested evidence proved that Officer Moore's unconstitutional conduct was in accordance with City policy.  This is not a case where the City was training its officers appropriately and the officer committed a constitutional violation not condoned by the City.  Rather, this is a case where the City itself erroneously believed that opening doors to homes in response to loud noise complaints was constitutional, and thus, it failed to train its officers on the correct law.  That failure directly resulted in Officer Moore's unlawful conduct at the Schinagels.  The evidence to support municipal liability came through the testimony of the City's own policies and procedures representative and Officer Moore and through evidence that did not require weighing of credibility.  Although this Court generally is loathe to set aside a jury verdict, where as here,

Plaintiffs established a legally sufficient municipal liability claim through uncontested evidence that the jury would not be at liberty to disbelieve, the verdict cannot stand. Plaintiffs are therefore entitled to judgment as a matter of law against the City on the municipal liability claim.

### E.     REMEDY

Rule 50(b) allows the Court to direct entry of judgment as a matter of law or to order a new trial. *See* Fed. R. Civ. P. 50(b)(2), (3). As previously noted, the Court determined that Officer Moore illegally entered Plaintiffs' property, but the jury subsequently found that Officer Moore's illegal entry did not proximately cause Plaintiffs any actual damages. As more fully discussed below, that causation finding was not contrary to law or the evidence. The fact that the Court has herein determined that the City is separately liable for Officer Moore's illegal entry does not change the amount of the damages (or lack thereof) awarded. Consequently, the jury's determination that Officer Moore did not proximately cause any damages is conclusive that the City also did not proximately cause Plaintiffs any actual damages. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999) (holding that, where jury found that officer used excessive force but only awarded nominal damages against officer, plaintiff could not re-litigate issue of compensable injury in trial against City, and thus, plaintiff would be able to collect at most one dollar against City). The Court will therefore not disturb the jury's verdict as to damages and will instead enter judgment as a matter of law against the City in favor of the Schinagels in the amount of $1.00 each.

Although only a nominal amount, a "judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue." *Amato*, 170 F.3d at 317-18. The Court hopes that this judgment will serve these important societal purposes.

14

### III.     MOTION FOR NEW TRIAL

Plaintiffs contend that the Court should grant a new trial on all matters to prevent a miscarriage of justice, because the weight of the evidence was clearly in favor of Plaintiffs. Plaintiffs argue that Officer Moore's and Officer Speer's testimony was not credible, pointing to inconsistencies between their testimony and evidence.

### A.     STANDARD

Rule 59 provides that a court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 50(a)(1)(A).  "A motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court."  *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 616 (10th Cir. 1984). Where a motion for new trial is based on the verdict not being supported by the evidence, "the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."  *Snyder v. City of Moab*, 354 F.3d 1179, 1187 (10th Cir. 2003) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)).  A motion for new trial is viewed with disfavor and should only be granted with great caution.  *See Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).  The fact that the court may have come to a different conclusion than the jury does not justify a new trial.  *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998).

### B.     ANALYSIS

Plaintiffs assert that they are entitled to a new trial because the verdict was delivered in too short a time for the jury to have deliberated in a meaningful way and because the clear weight of the evidence shows that Defendants were liable on each of Plaintiffs claims and that Plaintiffs were entitled to a greater amount of damages.

### 1.     Meaningful deliberations

Plaintiffs argue that the jury's less than two-and-one-half hours of deliberation was not enough time for the jurors to have reviewed all the trial exhibits and to have considered all the evidence.  Plaintiffs point out that the belt tape was more than 30 minutes long and that the verdict form and jury instructions were lengthy.  The jury, however, heard the contents of the belt tape multiple times during the course of the trial, and counsel for both parties highlighted the most relevant portions of the belt tape to the jury, which would have taken much less than 30 minutes to review.  The Court also read all the instructions aloud to the jury at the end of trial, so the jurors were aware of the applicable law before they retired to deliberate.  Moreover, the exhibits and other evidence were not so voluminous that the jurors could not have considered them all in nearly two-and-one-half hours of deliberation.  Accordingly, the Court cannot conclude that nearly two-and-one-half hours were not enough time for the jury to meaningfully review all the evidence and arrive at a reasoned verdict.

### 2.     Weight of the evidence

Plaintiffs next contend that the clear weight of the evidence shows that Officer Moore lied about the facts supporting the charges against Plaintiffs and that both Officer Moore and Officer Lee Speer used excessive force against them.  Plaintiffs also assert that the verdict in the amount of $1.00 is not supported by the weight of the evidence.  Plaintiffs thus contend they are entitled to a new trial on all their claims.

### a.     Liability

Plaintiffs' argument for a new trial places great reliance on the contents of the belt tape. They contend that the belt tape contradicts Officer Moore's testimony because it did not pick up all the sounds of him knocking and ringing the doorbell to which he testified.  They further argue that

the contents of the belt tape are "entirely inconsistent" with his grand jury testimony.

The Court, which has listened to the contents of the belt tape multiple times, finds that the belt tape alone does not conclusively favor one party's version of events over the other.  For most of the duration of the belt tape, even with certain audio cues, it is difficult to determine exactly where Officer Moore was located in relation to the house.  Additionally, the belt tape is not conclusive as to the identity of the initial aggressor in the confrontation between Officer Moore and Mr. Schinagel in the doorway.

Portions of the belt tape both support and contradict aspects of Officer Moore's and the Schinagels' testimony.  For example, while the belt tape did not contain all knocks and each ring of the doorbell to which Officer Moore testified, it likewise did not contain Ms. Schinagel's alleged scream to which she testified.  The belt tape did pick up sounds of the Schinagels' dogs barking as well as Officer Moore's knocking on a door very shortly thereafter, sounds that cast doubt on the Schinagels' version of events that Officer Moore was watching them through the window when the dogs started barking.  Therefore, contrary to Plaintiffs' argument, the contents of the belt tape did not clearly impeach Officer Moore's testimony.  A reasonable juror could conclude that the belt tape confirmed the truthfulness of all or a substantial part of Officer Moore's testimony.

Because the contents of the belt tape, by themselves, were not conclusive, to make its factual findings, the jury had to rely in large part on its determination of which party was more credible, based on each witness's testimony and demeanor.  Plaintiffs' arguments that Officer Moore's testimony was unbelievable and against the weight of the evidence are unavailing.  Although Plaintiffs' counsel did impeach portions of Officer Moore's trial testimony with his grand jury testimony, particularly as to how far he went into the side yard and backyard, Officer Moore gave explanations for the discrepancies.  The jury may have found those explanations credible or it may

17

have disbelieved those portions but found the rest of his testimony believable. As the Court

instructed the jury, the jury was free to accept Officer Moore's testimony in whole or in part. (*See*

Court's Jury Instruction (Doc. 168) No. 36 ("You may, in short, accept or reject the testimony of

any witness in whole or in part.").) *See also United States v. Cueto*, 628 F.2d 1273, 1275 (10th Cir.

1980) ("A jury may believe a part of a witness' testimony, and disbelieve other parts.").

      Plaintiffs also contend that they effectively impeached Officer Moore's testimony that he

sustained an injury to his face when Mr. Schinagel struck him. They point out that Officers Juarez,

Del Greco, and Speer testified that they witnessed the injury to a different side or different part of

Officer Moore's face. Even assuming that their testimony as to the location of the injury differed

substantially, this discrepancy does not invalidate the entirety of their testimony. Moreover, they

all corroborated the fact that there was an injury; the jury may have found that any discrepancy as

to the exact location of the injury was due to faulty memory, not that one or all of the officers were

lying. The Court cannot say that such a conclusion was unreasonable or that the jury acted

unreasonably in relying on each officer's testimony.

      As for the excessive force claim against Officer Speer, Plaintiffs contend that the evidence

showed that Mr. Schinagel had his hands out in front of his body, palms forward, and was

complying with the officers demands. The trial testimony from the officers, however, indicated that

Mr. Schinagel was not complying with their commands to get down on the floor; instead, Mr.

Schinagel continued backing up down a dark hallway. There was also conflicting testimony about

whether Mr. Schinagel was in fact tasered or whether the taser failed to properly deploy. Although

Officer Juarez and Officer Speer's versions of what occurred differed to some extent from their

deposition testimony, those differences were not so substantial that the Court must conclude that the

jury acted unreasonably in crediting their testimony as to the events that occurred in the house with

Mr. Schinagel.  Based on the officers' versions of events, a jury could reasonably conclude that Officer Speer believed Mr. Schinagel posed a threat and/or that he was attempting to resist arrest and that the force used against Mr. Schinagel to effect his arrest (an arm-bar takedown) was reasonable.

In sum, the evidence presented at trial was not so overwhelmingly in favor of Plaintiffs that the Court is compelled to disregard the jury's determinations of credibility and to overturn its verdict as to liability.  A court should not overturn a jury's verdict merely because it may disagree with the jury's credibility determination.  *See Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995) ("In cases involving simple issues but highly disputed facts . . . , greater deference should be afforded the jury's verdict than in cases involving complex issues with facts not highly disputed."); *Franklin*, 981 F.2d at 1171 ("We do not agree with plaintiff that the jury's decision to believe some witnesses over other witnesses constitutes a miscarriage of justice requiring a new trial.").  The Court will therefore leave the jury's findings in favor of Officer Moore and Officer Speer on liability undisturbed.

### b.      Damages

Plaintiffs also contend that the verdict in the amount of $1.00 to vindicate their constitutional rights was not supported by the evidence.  They argue that the "jury simply did not understand that it was being asked to place a dollar value upon a violation of a constitutional right."  (Pls.' Mot. (Doc. 180) at 5.)  This argument is without merit.  The Court instructed the jury as to Plaintiffs' burden of proof to show they were entitled to compensatory, punitive, and/or nominal damages. (*See* Court's Jury Instructions (Doc. 168) No. 27-31) Plaintiffs did not object to any of these instructions.  The Court specifically instructed the jury that, because the Court had already concluded that Officer Moore violated Plaintiffs' constitutional rights on their unlawful entry claims, the jury had to consider Plaintiffs' damages.  (*See id.* No. 26).  The Court further instructed the jury:

> [I]f you find that the Schinagels have failed to prove that they are entitled to compensatory damages, you *must* award nominal damages for the unlawful entry claim. An award of nominal damages recognizes the importance to organized society that constitutional rights be scrupulously observed. Nominal damages are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.

(*Id.* No. 30.)

Although the jury did not award any compensatory or punitive damages, it followed the Court's instructions in awarding at least nominal damages in the amount of $1.00. The Court cannot find that this conclusion was against the weight of the evidence. To be entitled to more than $1.00, Plaintiffs had to prove they were entitled to compensatory damages by demonstrating the amount of damages as well as whether Officer Moore's unconstitutional entry proximately caused those damages. (*See id.* No. 29.) Both parties presented evidence on whether or not Officer Moore's unlawful entry proximately caused Plaintiffs' alleged damages. In finding for Officer Moore on the excessive force claim, the jury apparently believed his version of events – that Plaintiffs were the aggressors in the incident. Although Officer Moore's testimony was not entirely consistent with his prior statements to the grand jury, and the belt tape did not contain evidence of everything to which he testified, those inconsistencies are not enough to overturn the jury's verdict. *See Franklin*, 981 F.2d at 1171; *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992) ("The fact that there was conflicting testimony regarding causation and damages is not grounds for granting a new trial."). As the Court instructed the jury, the jury was free to accept Officer Moore's testimony in whole or in part. (*See* Court's Jury Instruction (Doc. 168) No. 36.) *See also Cueto*, 628 F.2d at 1275. The jury could have disbelieved parts of Officer Moore's testimony and still found other portions credible. For example, much of his testimony concerning the physical confrontation with Plaintiffs was consistent and was corroborated by other evidence in the case, including the belt tape.

Moreover, as discussed above, portions of Plaintiffs' versions of the events of that night were also subject to impeachment. The jury may find one witness's version of events more credible than multiple witnesses' versions. (See Court's Jury Instruction (Doc. 168) No. 36 ("Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.").) The belt tape, by itself, was also inconclusive as to which party first used force against the other. Consequently, Officer Moore's testimony, if believed, was sufficient to show that Plaintiffs were the aggressors. Based on the verdict, the jury must have found Officer Moore's version of events more credible. Even considering the portions of his testimony that were impeached, Officer Moore's testimony as a whole was not so unbelievable that the jury's reliance on it was clearly in error or against the weight of the evidence. It therefore was not unreasonable for the jury to find that Officer Moore's illegal entry did not proximately cause Plaintiffs' damages; rather, Plaintiffs' own actions did.

Although Plaintiffs did testify to certain emotional damages incurred from feeling violated by Officer Moore watching them and entering their home, the jury apparently found this testimony incredible. Officer Moore testified that he did not watch them through the window. Because the belt tape was not dispositive on this issue, there was no objective evidence contradicting his testimony. A jury could thus reasonably conclude that Plaintiffs did not actually suffer any emotional damages for which a monetary value of greater than $1.00 should be imposed for the unlawful entry itself.

Having reviewed all the evidence in the case, the Court concludes that the verdict is not clearly and overwhelmingly against the weight of the evidence. The jury's determination that

Plaintiffs did not prove damages, other than nominal damages, from Officer Moore's unlawful entry into their curtilage and home will therefore stand. *See Amato*, 170 F.3d at 314 (holding that jury's finding of excessive force did not automatically entitle plaintiff to compensatory damages; jury could reasonably award nominal damages where plaintiff's claims of injury lack credibility or where injury resulted from justified use of force); *Lancaster v. Rodriguez*, 701 F.2d 864, 866 (10th Cir. 1983) (concluding that if a plaintiff established a constitutional violation, but did not prove resulting damages, the recovery is limited to nominal damages).

**IT IS THEREFORE ORDERED** that

1.      Plaintiffs' Renewed Motion for Judgment as a Matter of Law on Claim for Failure to Properly Train (**Doc. 170**) is **GRANTED**;

2.      Plaintiffs' Motion for New Trial (**Doc. 180**) is **DENIED**; and

3.      Judgment as a matter of law will be entered against Defendant City of Albuquerque in favor of Gary and Penny Schinagel in the amount of $1.00 each.

_____
SENIOR UNITED STATES DISTRICT JUDGE