**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

GARY SCHINAGEL and
PENNY SCHINAGEL, Husband and wife,

      Plaintiffs,

v.                                                   No. Civ. 07-481 LH/RLP

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
RUSSELL MOORE,
RAYMOND DEL GRECO,
LEE SPEER and JOHN DOES 1-15,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

On May 5, 2009, Plaintiffs Gary and Penny Schinagel filed a Motion for Attorneys' Fees and Expenses (Doc. 185). The Court, having considered the motion, briefs, evidence, and applicable law, finds that the motion should be granted in part.

**I.   BACKGROUND**

On December 18, 2008, this Court entered a Memorandum Opinion and Order (Doc. 116), granting Plaintiffs summary judgment on their unlawful entry claims against Defendant Russell Moore brought under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. The case proceeded to trial before a jury on April 13-16, 2009, against Defendants Russell Moore, Lee Speer, and the City of Albuquerque ("the City"). At trial, Plaintiffs Gary and Penny Schinagel asserted claims against Officer Moore for unlawful entry and seizure, unlawful arrest, excessive force, and malicious prosecution under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution as well as state tort claims

for assault and battery and false arrest and imprisonment. Gary Schinagel also proceeded against Officer Speer on a § 1983 claim for excessive force and state tort claims for assault and battery. Both Gary and Penny Schinagel asserted a municipal liability claim against the City for violation of their Fourth Amendment rights for failure to adequately train its officers concerning entry into citizen's homes and yards.

At the end of Plaintiffs' evidence, Plaintiffs moved for judgment as a matter of law on their municipal liability claim. The Court denied the motion at that time and allowed the case to proceed to the jury. Following their deliberations, the jury returned a verdict in favor of Defendants on all claims except the Schinagels' unlawful entry claims against Defendant Moore. As to those claims, the jury awarded Gary and Penny Schinagel $1.00 each, the minimum amount to which they were entitled. On April 21, 2009, the Court entered Final Judgment (Doc. 179) for the Schinagels against Defendant Moore in the amount of $1.00 each. Plaintiffs then filed a renewed motion for judgment as a matter of law on their municipal liability claim (Doc. 170) and a motion for new trial (Doc. 180).

Additionally, Plaintiffs filed a Motion for Attorneys' Fees and Expenses (Doc. 185), contending that they are the prevailing party in this action based on the jury's award of $1.00 in nominal damages to each Plaintiff. They argue that a plaintiff who recovers nominal damages is still a prevailing party entitled to attorneys' fees. Due to the City's "no-settlement policy," Plaintiffs contend they had no choice but to incur substantial fees and costs in order to bring their civil rights claim to trial. They therefore assert that their attorneys' fees, paralegal fees, expenses, plus applicable New Mexico gross receipts tax ("GRT"), entitle them to an award of $198,201.93.[1]

---

[1]This amount is the total sought by Plaintiffs in their reply (Doc. 200), which accounts for the additional fees incurred in preparing the reply and notice of completion of briefing.

As broken down, Plaintiffs seek the following fees:

| Name | Hours | Hourly Rate | Total |
|---|---|---|---|
| Kenneth R. Wagner, Attorney | 111.8 | $250.00 | $27,950.00 |
| Lisa Ford, Attorney | 544.45 | $235.00 | $127,945.75 |
| Liane Kerr, Attorney | 45.75 | $175.00 | $8,006.25 |
| Helen Bennett, Research Clerk | 48.00 | $110.00 | $5,280.00 |
| Colleen Lynch, Paralegal | 47.5 | $60.00 | $2,850.00 |
| Paige Nguyen, Paralegal | 48.6 | $60.00 | $2,916.00 |
| **SUBTOTAL:** (not including GRT) | | | **$174,948.00** |
| Plus GRT at 6.75%[2] | | | + $11,808.99 |
| Plus Expenses | | | + $11,444.94 |
| **TOTAL:** (including GRT and expenses) | | | **$198,201.93** |

(*See* Pls.' Reply (Doc. 200) at 4.)

Defendants object to this amount, arguing that Plaintiffs only achieved partial success and that they are therefore not entitled to all the fees they request.[3] Defendants acknowledge that Plaintiffs are entitled to attorneys' fees and expenses for the discovery and motions practice that resulted in their limited victory in the amount of $99,466.72. Defendants contend that, although Plaintiffs nominally prevailed on their illegal entry claim, they failed to prove liability on their other claims at trial and received only a very small fraction of the damages they sought. They contend

---

[2]Defendants also argue that Plaintiffs miscalculated the GRT in their motion, which should be taxed at a rate of 6.75%. In their reply, Plaintiffs agree that 6.75% is the correct GRT, so the Court will apply this rate to any award.

[3]The Court will deny Plaintiffs' request to strike Defendants' response for being filed one day late, as there was no prejudice shown by the late filing and the contents of the response will help the Court resolve the legal and factual matters at issue.

that Plaintiffs should not recover for the motions practice they did not prevail on or for any of their trial work. Defendants thus argue that, as to the motions practice, Plaintiffs should only receive fees for their work related to the following motions: the City Defendants' motion to dismiss claims based on the New Mexico Constitution (Doc. 58); Plaintiffs' motion for summary judgment on Count I (Doc. 61); the City Defendants' motion for partial summary judgment No. I (Doc. 67); and the City Defendants' motion for separate trials (Doc. 66).

After the briefing was completed on the motion for attorneys' fees, this Court, in a Memorandum Opinion and Order filed contemporaneously with this opinion, denied Plaintiffs' motion for new trial, but granted Plaintiffs' renewed motion for judgment as a matter of law on the municipal liability claim. The Court determined that the uncontested evidence at trial proved that Officer Moore's unconstitutional conduct was in accordance with City policy and that the City failed to properly train him, resulting in the unlawful entry. The Court, however, also found that the jury's determination on damages in the amount of $1.00 against Officer Moore was a conclusive determination that Plaintiffs did not sustain any damages as a result of the constitutional violation. The Court therefore entered judgment as a matter of law against the City in favor of the Schinagels in the amount of $1.00 each.

Although the parties have not addressed the effect of the Court's ruling on the renewed motion for judgment as a matter of law, the Court finds that the parties' briefs are sufficient for it to consider the attorneys' fees issues in light of the Court's ruling and that no further briefing will materially assist it. The Court will therefore now consider Plaintiffs' motion for attorneys' fees.

## II.    ANALYSIS

"In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ."

42 U.S.C. 1988(b). In deciding whether to award attorney's fees under § 1988, a court must determine (1) whether the party seeking fees is a "prevailing party" and, if so, (2) what fee is "reasonable." *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997).

### A. Prevailing Party

A plaintiff is a "prevailing party" under § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). A plaintiff who wins nominal damages is a prevailing party. *Id.* at 112.

In this case, Defendants do not dispute that Plaintiffs are each a "prevailing party" based on the $1.00 nominal damages awarded to each Plaintiff. This Court agrees that Plaintiffs are "prevailing parties" under § 1988, and thus, the Court must determine what fee is reasonable. *See id.*; *Koopman v. Water Dist. No. 1 of Johnson County*, 41 F.3d 1417, 1420 (10th Cir. 1994) (holding that plaintiff was prevailing party because he was awarded nominal damages).

### B. Reasonableness of Fee

#### 1. Entitlement to reasonable fees

Generally, the prevailing party under § 1988 should recover an attorney's fee unless special circumstances would render the award unjust. *Phelps*, 120 F.3d at 1131 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989)). In light of the importance Congress has placed on using fee awards to ensure meaningful private enforcement of civil rights laws, the Tenth Circuit has held that a district court's discretion to deny fees to a prevailing party is "quite narrow." *Id.* (quoting *Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir. 1987)).

The fact that a plaintiff receives only nominal damages, however, rather than a larger award, is relevant to the reasonableness of the fee award, because it is indicative of the degree of success

obtained. *See Farrar*, 506 U.S. at 114. A district court, in exercising its discretion to fix fees, must give primary consideration to the amount of damages awarded as compared to the amount sought. *Id.* "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115 (internal citation omitted). In a civil rights suit for damages, an award of nominal damages highlights the plaintiff's failure to prove the element of actual, compensable injury. *Id.* A court must therefore consider the relationship between the extent of success and the amount of the fee award. *Id.* at 115-16.

The Tenth Circuit applies a three-part test, set forth in Justice O'Connor's concurrence in *Farrar*, to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees at all. *Phelps*, 120 F.3d at 1131. To determine the relevant indicia of success, the court must consider and weigh (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation. *Id.* The first and most significant factor is the degree of success obtained. *Id.* at 1132. The second factor looks at the extent to which the plaintiff succeeded on his theory of liability. *Id.*; *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1231 (10th Cir. 2001). The third factor examines whether the judgment vindicates important rights and deters future lawless conduct as opposed to merely occupying the time and energy of counsel, the court, and the client. *Phelps*, 120 F.3d at 1132.

As to the first factor, the difference between the amount sought and the amount recovered is substantial in this case. At trial, Plaintiffs sought damages for their physical and emotional injuries, pain and suffering, medical costs, criminal defense costs, property damage, as well as punitive damages against Officer Moore and Officer Speer. Plaintiffs' counsel urged the jury that

6

only a verdict for "six or seven figures" in damages would send a message to stop Defendants' unlawful actions. (Trial Tr. (Doc. 199) at 13.) In being awarded only $1.00 each in damages for each of the unlawful entry and municipal liability claims, Plaintiffs have received a very small fraction of what they sought. Although this first factor does not preclude fees, it does not weigh in favor of Plaintiffs. The Court notes, however, that unlike in *Farrar* where the plaintiff sought $17 million after protracted litigation, *see* 506 U.S. at 106, Plaintiffs' claims for damages were not extravagant and the litigation has not been drawn out.

The second factor, in contrast, does weigh in favor of Plaintiffs. The fact that Plaintiffs prevailed on the merits of their unlawful entry and municipal liability claims is significant. That Plaintiffs did not succeed on their other federal claims for excessive force, unlawful arrest, and malicious prosecution, as well as the similar state law claims, does not diminish the importance of their prevailing on their Fourth Amendment unlawful entry claim. *See Phelps*, 120 F.3d at 1132 ("That the plaintiffs prevailed on only one of their four underlying claims itself does not diminish the reasonableness of awarding some attorney's fees commensurate with their legal efforts in bringing that claim."). The unlawful entry claim was the primary claim from which the other claims precipitated. Had Officer Moore not illegally entered Plaintiffs' home and curtilage, the other claims would not have arisen. Moreover, of the four defendants sued in the case,[4] Plaintiffs prevailed against half of them – Officer Moore and the City. The extent to which Plaintiffs succeeded on their theory of liability is therefore significant enough for this factor to weigh in their favor.

As to the third factor, Plaintiffs' suit has served a broader public purpose in further clarifying

---

[4]Although Albuquerque Police Department was named separately, it is really a division of the City.

the Fourth Amendment rights of homeowners. The City had been under a mistaken belief that entering the curtilage and opening doors to citizens homes merely for noise violations was constitutionally permissible. As a result of Plaintiffs' lawsuit, the City is on notice that this unwritten policy was unconstitutional. Plaintiffs' case should serve to prevent such unconstitutional conduct against Albuquerque citizens in the future. Moreover, the importance of this right cannot be overstated. As the Supreme Court has repeatedly emphasized, physical entry of the home is the chief evil against which the Fourth Amendment is directed. *Wilson v. Layne*, 526 U.S. 603, 610 (1999) (quoting *United States v. United States Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 313 (1972)). *See also Kyllo v. United States*, 533 U.S. 27, 37 (2001) (internal quotations and citations omitted) ("[A]ny physical invasion of the structure of the home, by even a fraction of an inch, was too much, and there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor."). Consequently, the third factor also weighs in favor of awarding reasonable fees. *See Brandau v. Kansas*, 168 F.3d 1179, 1183 (10th Cir. 1999) (affirming trial court's award of attorney fees, even though jury only gave plaintiff nominal damages, because plaintiff's victory put Kansas on notice that it should reform its sexual harassment policies, thus providing a broad constitutional benefit to other employees); *Phelps*, 120 F.3d at 1132-33 (holding that district court erred in not determining amount of reasonable fees, because plaintiffs' victory, while limited to success on only one of four claims, was not merely technical or *de minimus* where it served public purpose of invalidating vague state statute and resulted in legislative action to correct constitutional error); *Koopman*, 41 F.3d at 1421 (holding that plaintiff was entitled to reasonable fee award, even though award of nominal damages did little for plaintiff personally, because verdict had significant implications in establishing basic rights for public employees holding similar property interests).

After weighing all three factors, the Court finds that Plaintiffs' success is not purely technical or *de minimus*, and thus, Plaintiffs' counsel is entitled to a reasonable fee in this case. The Court recognizes that the nominal damages award is low in comparison with the recovery sought, but instead of denying all fees, the Court will weigh that fact when determining whether an adjustment to the "lodestar" amount is appropriate.

### 2.     Amount of fees

An award of fees requires a two-step process in which the court must find (1) the reasonable number of hours that counsel expended in the litigation, multiplied by the reasonable hourly rate (this total figure is known as the "lodestar" amount); and (2) whether any adjustment should be made to the "lodestar" amount. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). As for whether to make an adjustment, the court should focus on the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation. *See Hensley*, 461 U.S. at 435. "There is no precise rule or formula for making these determinations." *Id.* at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to accord for limited success." *Id.* at 436-37. The district court has discretion in making this equitable judgment. *Id.* at 437.

#### a.     Hours reasonably expended

To determine the hours Plaintiff reasonably expended pursuing this action, the Court must examine the reasonableness of total time reported by counsel and the time allotted to specific tasks. *Ramos v. Lamm*, 713 F.2d 546, 553-554 (10th Cir. 1983), *abrogated on other grounds by Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711 (1987). The overriding consideration is whether the attorney's hours were necessary under the circumstances.

*Robinson*, 160 F.3d at 1281. The court must consider what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances. *Id.* Among the factors to consider are (1) whether the billed tasks would normally be billed to a paying client; (2) the number of hours spent on each task; (3) the complexity of the case; (4) the number of reasonable strategies pursued; (5) the responses necessitated by the maneuvering of the other side; and (6) potential duplication of efforts by multiple attorneys. *Id.* (quoting *Ramos*, 713 F.2d at 554). In order to prove the number of hours reasonably spent on the litigation, the party must submit "'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Id.* at 1281 (quoting *Ramos*, 713 F.2d at 553).

### 1)   Discovery practice

Defendants acknowledge that Plaintiffs are entitled to their attorneys' fees for their informal and formal discovery tasks performed in the case. The Court likewise finds that Plaintiffs' discovery efforts were reasonable.

### 2)   Motions practice

Defendants argue that Plaintiffs should not recover their fees related to various motions for which they were not successful either bringing or defending. Merely because Plaintiffs did not succeed on the merits of an individual motion or response, however, does not mean that Plaintiffs' work on that motion or response was unreasonable. The more appropriate question is whether Defendants' motion necessitated a response by Plaintiffs and whether the amount of hours defending the motion were reasonable. *See Robinson*, 160 F.3d at 1281. Likewise, the Court should consider whether an unsuccessful motion filed by Plaintiffs was a reasonable request to make or strategy to pursue. The Court notes that this case was heavily litigated and that most of the motions were filed by Defendants.

a) **Defendants' Motion to Dismiss No. I**

Defendants contend that Plaintiffs should not recover $3,318.86 in attorneys' fees and GRT on their work on the City Defendants' Motion to Dismiss No. I (Doc. 16) because Defendants successfully defeated a number of Plaintiffs' causes of action in that motion. In its response to the motion, Plaintiffs did not oppose many of the requests to dismiss by Defendants. They did oppose the dismissal of their intentional infliction of emotional distress and prima facie tort claims, but the law was clearly not in their favor as to those claims. Plaintiffs request a total of 17.1 hours of work dealing with this motion, which the Court finds is unreasonable given the lack of opposition to many of the requests and that the law was clearly in favor of Defendants on many of the issues in the motion. The Court will therefore reduce by half the amount of hours spent on the motion. Lisa Ford's hours will be reduced from 10.2 to 5.1 hours; Helen Bennett's hours will be reduced from 6.5 to 3.25 hours; and Colleen Lynch's hours will be reduced from 0.4 to 0.2 hours.

b) **Defendants' Motion for Protective Order**

Defendants filed a Motion for Protective Order Barring Plaintiffs from Taking a Rule 30(b)(6) Deposition of a Witness who will Testify about City Defendants "No Settlement Policy" (Doc. 57). The Honorable Richard L. Puglisi granted the motion, concluding that the no-settlement policy was not germane to the issues in the case and that Defendants have a right not to make a settlement and instead to opt for trial. (*See* Mem. Op. and Order (Doc. 110) at 3-4.) Based on that ruling, Defendants argue that Plaintiffs should not recover fees related to the motion. The Court agrees. Because Plaintiffs' position was clearly untenable, their attempts to seek discovery on the no-settlement policy was unreasonable. The Court will therefore not allow Plaintiffs attorney's fees relating to Defendants' motion for protective order. Accordingly, Lisa Ford's hours will be reduced by 11.6 hours.

### c)      Defendants' Motion in Limine No. I

Defendants filed a "Motion in Limine No. I: The Exclusion of the Testimony of Plaintiffs' Expert Linda Gardner and the Video Simulation based on their Failure to Meet the Standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)" (Doc. 63).  The Court granted the motion, concluding that the video simulation was substantially more prejudicial than probative.  (*See* Mem. Op. and Order (Doc. 121) at 8.)  Defendants seek to reduce Plaintiffs' fees regarding their attempts to use the testimony of Linda Gardner and admit the video simulation.

Although Plaintiffs lost in their efforts to have such evidence admitted, the Court cannot say that their strategy was unreasonable or that their position was clearly without merit.  The video simulation is a task that might normally be billed to a paying client in order to strengthen the client's case.  Plaintiffs' efforts in responding to the motion were therefore reasonable and the Court will not reduce their hours responding to Defendants' Motion in Limine No. I.

### d)      Defendants' Motion in Limine No. II

Defendants filed a "Motion in Limine No. II: The Exclusion of the Opinions of Plaintiffs' Polygrapher, James Lee Wilson, based on his Failure to Meet the Standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702 and 403" (Doc. 64). The Court granted the motion and excluded the evidence, because the polygraph testimony would not assist the jury and would be unduly prejudicial. (*See* Mem. Op. and Order (Doc. 121) at 11-13.) In the opinion, this Court noted that the Tenth Circuit has expressed deep reservations as to the admission of expert testimony on the credibility of witnesses.  Given this circuit's significant reservations concerning admitting polygraph tests merely to bolster the credibility of a witness, it is doubtful that efforts to fight this decidedly uphill battle would normally be billed to a paying client.  The Court therefore finds that Plaintiffs' efforts in seeking to use Mr. Wilson's testimony

and in responding to the Motion in Limine No. II were not reasonable tasks and should not be reimbursed. Accordingly, Lisa Ford's hours will be further reduced by 12.4 hours and Liane Kerr's hours will be reduced by 1.75 hours.

### e)  Defendants' Motion in Limine No. III

Finally, Defendants contend that Plaintiffs should not recover for their efforts in seeking to admit the testimony of their police procedures expert Larry Danaher and in responding to Defendants' "Motion in Limine No. III: The Exclusion of Plaintiffs' Police Procedures Expert, Larry Danaher, based on his Failure to Meet the Standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)" (Doc. 65). Plaintiffs sought to introduce Mr. Danaher's opinions regarding the unconstitutional conduct of the Defendant Officers as well as the negligent training of APD. The Court granted Defendants' motion in part and limited Mr. Danaher's testimony to the municipal liability claims against APD. (*See* Mem. Op. and Order (Doc. 121) at 14-17.) Plaintiffs, however, chose not to call Mr. Danaher at trial.

Plaintiffs in civil rights lawsuits frequently attempt to use experts like Mr. Danaher at trial, as such testimony often bolsters their cases in the eyes of juries. Courts are not uniform in their decisions on the admissibility of expert opinions on whether an officer used excessive force. Attempting to use an expert like Mr. Danaher is thus a task that would often and normally be billed to paying clients, and thus, is reasonable. Although Plaintiffs did not ultimately call Mr. Danaher as a trial witness, Plaintiffs may have decided, after Mr. Danaher's testimony was significantly limited by the Court, that paying additional expert witness fees to have him attend trial were no longer worth the reduced benefit, especially in light of the other strong evidence Plaintiffs had to support their municipal liability claim. That reasonable economic decision should not prevent them from recovering their fees and expenses in their efforts to admit Mr. Danaher's expert opinions on

the use of force. The Court will therefore not reduce Plaintiffs' hours in responding to Defendants' Motion in Limine No. III and will not deny Plaintiffs' recovery of their expert witness expenses.

### 3) Trial preparation and practice

Finally, Defendants argue that Plaintiffs should not recover fees for their work at trial because they lost on all their claims, other than the award of nominal damages for the unlawful entry claim. It is true that Plaintiffs won nothing more on their unlawful entry claim at trial than they were already entitled to after the Court's summary judgment ruling in their favor. This Court, however, has subsequently ruled as a matter of law that Plaintiffs proved their municipal liability claim at trial. Although Plaintiffs will each only receive an additional $1.00 in damages arising from that ruling, Plaintiffs nonetheless achieved additional success on an important issue at trial that should benefit the greater public. The Court has reviewed Plaintiffs' attorneys' fees request related to their trial preparation and trial work and finds that the hours expended were reasonable. The Court will therefore not reduce the hours reasonably expended, but instead, will consider the limited success Plaintiffs had in recovering only nominal damages in analyzing whether an adjustment to the lodestar amount is appropriate.

### b. Hourly rate

The applicant bears the burden to show that the requested rates are reasonable, that is, they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Ellis v. University of Kansas Med. Ctr.,* 163 F.3d 1186, 1203 (10th Cir. 1998) (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). When determining the appropriate rate to apply, the court should base its hourly rate award on what the evidence shows the market commands for analogous litigation. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (quoting *Case v. Unified Sch. Dist.*

*No. 233*, 157 F.3d 1243, 1255 (10th Cir. 1998)). "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987).

Defendants do not object to the hourly rates sought by Plaintiffs. The Court has considered the hourly rates, as well as the affidavits provided by Plaintiffs, and finds that they are reasonable and reflect the market rate for lawyers, law clerks, and paralegals of comparable skill, experience, and reputation. The Court notes that Mr. Wagner and Ms. Ford each have many years of legal experience and the Court witnessed first-hand their competence and skill during the course of this litigation.

### c.    Adjustment

A plaintiff who wins nominal damages, but fails to prove actual damages, "under *Farrar* is not entitled to full reimbursement for attorney's fees and costs." *Koopman*, 41 F.3d at 1421. Deterring meritorious lawsuits on constitutional issues where damages are low, however, presents as grave a danger to the legal system as frivolous lawsuits. *Id.* Where a plaintiff has been awarded only nominal damages but has vindicated a constitutional right of significance extending beyond the plaintiff, the Tenth Circuit strikes the balance by reducing rather than denying the award of attorney's fees. *Id.*

The Court finds that a downward adjustment is appropriate to reflect Plaintiffs' lack of success in proving damages or in succeeding on their other claims. A reduction also takes into account the fact that not all the witnesses and evidence presented at trial were necessary for Plaintiffs' municipal liability claim. After considering all the necessary factors, the Court concludes that a 15% reduction is appropriate in this case. *Cf. Sanchez v. Matta*, 2005 WL 2313621, *16-17 (D.N.M. July 29, 2005) (J. Browning) (unpublished opinion) (applying 10% reduction where

plaintiff only received nominal damages). A larger downward adjustment is not warranted, however, given the extent of the public benefit involved as well as the importance of encouraging attorneys to litigate civil rights violations, even in the absence of significant damages.

**C.    Expenses**

A prevailing party, in addition to attorney's fees, is entitled to expenses under § 1988. *See Case*, 157 F.3d at 1249. "Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate." *Id.* at 1257. The prevailing party bears the burden of establishing the amount of expenses to which they are entitled. *Id.* Reasonable expenses may include fax and Westlaw or Lexis charges. *See id.* at 1257-58.

In this case, Plaintiffs request expenses in the amount of $11,444.94 for long distance phone charges, postage, Federal Express charges, copies, Lexis Nexis internet charges, an expert witness retainer for Mr. Danaher, and an expert witness fee for David M. Grossi. (*See* Pls.' Mot. (Doc. 185-3) at 12-14.) Mr. Wagner averred that the expenses sought are those for which are not normally absorbed as part of his law office overhead but are routinely passed on to paying clients. (*See* Aff. of Attorney Kenneth R. Wagner (Doc. 185-5) ¶ 17.) Defendants object to Plaintiffs receiving any of their expenses based on Plaintiffs' limited success on their claims. Defendants, however, do not object to any specific itemized expense charges.

The Court has considered Plaintiffs itemized expense records and agrees that Plaintiffs are entitled to the types of expenses requested. Plaintiffs, however, failed to explain in their expense records or in their affidavits how each and every expense was related to the litigation. For example, the Court acknowledges that in a case such as this, there will be legitimate reasons to incur charges for copies, phone charges, and mailing. For virtually all the copy, mailing, and long distance

charges, Plaintiffs offer no detail as to why these fees were incurred. The Court nevertheless went through the effort of comparing the dates Plaintiffs incurred the expense with their detailed time charts to see if it could determine the reason for the expense. Most of the expense charges do not correspond with an entry by any attorney, paralegal, or law clerk for any work performed. The Court could only determine a legitimate reason related to the litigation for the expenses incurred on the following dates: May 8, 2007 (long distance charge for $0.09); October 9, 2007 (long distance charge for $0.09); January 2, 2008 (long distance charge for $0.09); January 10, 2008 (two long distance charges for $0.54); February 29, 2008 (postage for $5.75); March 6, 2008 (five long distance charges for $2.70); and March 7, 2008 (long distance charges for $0.27). Because Plaintiffs have not met their burden to establish the reasonableness of the other copy, mailing, and phone charges, the Court will only award Plaintiffs $9.53 for such expenses.

  Similarly, although this Court recognizes that many internet research charges may have been incurred in this case due to the extensive motions practice and briefing on multiple issues, Plaintiffs have not met their burden of proof as to the majority of the charges. Again, the Court compared the dates of the LexisNexis internet fees to see if they corresponded to research work by the attorneys, paralegals, or law clerk in order to find a reasonable basis for the charges. Only the research performed on the following dates had a corresponding entry indicating the need for, and thus reasonableness of, the research: December 3, 2007 ($143.39); February 29, 2008 ($13.63); April 30, 2008 ($205.95); and April 14, 2009 ($350.70). Although other entries in the attorneys' log indicates they performed necessary research on other dates, the Court cannot presume that such research resulted in LexisNexis internet fees, as many attorneys still perform research out of books. The Court will therefore award only $713.67 in expenses related to internet research charges.

  In contrast, the record establishes the need and reasonableness for Plaintiffs' expert retainer

and expert witness fees in this case. The Court will therefore award $7,000.00 for Mr. Danaher's expert retainer fee and for Mr. Grossi's expert witness fee.

Consequently, the total expenses awarded to Plaintiffs will be reduced to $7,723.20.

## III.   CONCLUSION

For all the aforementioned reasons, and taking into account all the reductions discussed above, Plaintiffs will be awarded the following fees:

| Name | Hours | Hourly Rate | Total |
|---|---|---|---|
| Kenneth R. Wagner, Attorney | 111.8 | $250.00 | $27,950.00 |
| Lisa Ford, Attorney | 515.35 | $235.00 | $121,107.25 |
| Liane Kerr, Attorney | 44.0 | $175.00 | $7,700.00 |
| Helen Bennett, Research Clerk | 44.75 | $110.00 | $4,922.50 |
| Colleen Lynch, Paralegal | 47.3 | $60.00 | $2,838.00 |
| Paige Nguyen, Paralegal | 48.6 | $60.00 | $2,916.00 |
| **SUBTOTAL:** (not including GRT) | | | $167,433.75 |
| Plus GRT at 6.75% | | | + $11,301.78 |
| Plus Expenses[5] | | | + $7,723.20 |
| **TOTAL:** (including GRT and expenses) | | | $186,458.73 |
| **15% Downward Adjustment** | | | - $27,968.81 |
| **GRAND TOTAL:** | | | **$158,489.92** |

---

[5]Plaintiffs did not request GRT on any of their expenses or show that they are entitled to such. The Court will therefore not award GRT on any of the requested expenses.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Expenses (**Doc. 185**) is **GRANTED** in the amount of **$158,489.92**.

_____
SENIOR UNITED STATES DISTRICT JUDGE